E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

November 16 2020 2:44 PM

KEVIN STOCK
COUNTY CLERK
NO: 20-2-08408-1

1

2

3

4

5

6

7

## SUPERIOR COURT FOR THE STATE OF WASHINGTON
## COUNTY OF PIERCE

| | |
|---|---|
| STEPHANIE MYKLAND, Individually, | NO. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | |
| COMMON SPIRIT HEALTH, doing business as CHI FRANCISCAN HEALTH and as SAINT CLARE HOSPITAL | |
| Defendant. | |

**COMES NOW** the Plaintiff, by and through her attorney of record, Thaddeus P. Martin, by and through this Complaint and by way of claim allege as follows:

### 1.    INTRODUCTION

This lawsuit is for damages against Common Spirit Health doing business as CHI Franciscan (hereinafter "CHI") and is brought under all available tort claims and pursuant to RCW 49.60, et seq.  Defendants unlawfully and tortiously engaged in severe and pervasive pattern of discriminatory practices against the Plaintiff in violation of RCW 49.60, et seq. and the common law based on plaintiff's gender and sexual orientation.

COMPLAINT FOR DAMAGES
PAGE 1

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

## II. JURISDICTION

2.1    This Court has jurisdiction over this matter under RCW 49.60, et seq.

2.2    This Court has both personal and subject matter jurisdiction over this matter.

### III.    VENUE

3.1    Venue is proper in this Court.

### IV. PARTIES

4.1    Plaintif is a female, lesbian nurse employed during all relevant times with CHI Franciscan in the Emergency Department at St. Clare Hospital in Lakewood, Washington.  Plaintiff was employed by defendant.

4.2    CHI Franciscan is a hospital offering service to the public in the State of Washington which employs more than 15 persons and was Plaintiff's employer.

### V.    FACTS

5.1    Plaintiff was discriminated against based on her gender and sexual orientation, as a lesbian. Plaintiff officially complained to defendants that she was experiencing discrimination based on her gender and sexual orientation, yet the discrimination continued and retaliation began.

5.2    Plaintiff was issued a written warning, a final written warning and a notice of discharge from employment from March 20, 2019 to December 6, 2019, after she formally complained of discrimination. These formal write ups were not progressive and no just cause was met. There was unequal application of rules and the penalty that did not match the offense. These writes up were punitive rather than corrective. There was no equitable treatment applied. The plaintiff was disciplined more severely than her peers and when she reached out to management it was not addressed on multiple occasions.

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

5.3.    The plaintiff was employed in March 2018 as an Emergency Room Technician and worked those five months without any issues or cause for concern. She was hired in May 2018 as a Registered Nurse with a start date for August 13, 2018. A week prior to this start date, plaintiff learned that Cathie May was going to be her back up preceptor. May and plaintiff have a past history of negative events which Stephanie Earnhardt was aware of.  Plaintiff brought that concern as well as a statement that May made stating that "they only give me people to precept when they want people weeded out." Earnhardt implored plaintiff to trust her and told plaintiff she "wanted to push her outside of her comfort zone." This was the first time plaintiff brought up the concern to management of being in a hostile work environment and it was minimized.

5.4    Plaintiff's training with May was incredibly stressful and difficult.  The following examples provide a picture of plaintiff's experience. Plaintiff's first IV start was with a combative patient.  Plaintiff reached out to May for help. May leaned back on the counter with her arms crossed and told plaintiff to "figure it out." Additionally, plaintiff was openly yelled at by May in front of the tube system for sending off patient blood work that was witnessed by multiple staff in the vicinity.  The plaintiff chose to set these uncomfortable occurrences aside and focus on learning.

5.4    In May of 2018 when plaintiff was offered a registered nurse position, Trish Lanphere and plaintiff officially disclosed that they were in a romantic relationship as a couple to Stephanie Earnhardt. This was prior to plaintiff accepting the offered registered nurse position in the ED. Lanphere, at the time, was a charge nurse and both believed it was necessary to disclose their relationship since Lanphere was in a supervisory position over plaintiff. Earnhardt told plaintiff and Lanphere that she had discussed this disclosure with Jesse, the Human Resource Manager and it was approved for Lanphere to remain in this position until May falsely complained to

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

management that Lanphere was displaying favoritism towards plaintiff in August of 2018. This went to the new manager of Human Resources Mary Ann Mendez and the decision was made that plaintiff could not work while Lanphere was in the role of charge nurse. At this point, Lanphere stepped down from her position as charge nurse, one reason why was that both the plaintiff and Lanphere were informed that the plaintiff would not be allowed to work any overtime or on days that Lanphere was working as the charge nurse. At this time Lanphere was in the charge nurse position during all of her nursing shifts. Outside of work, Lanphere and plaintiff had personal friendships with various staff members from St. Clare ER, including manager Earnhardt. Having this personal relationship with Earnhardt made her compromise her position as an authoritative figure with Mykland and Lanphere. If there was an issue with having Lanphere in an authoritative role then Earnhardt should have removed herself from the situation due to conflict of interest.

5.5     Another witnessed situation with plaintiff and May was so bad that another nurse called the anonymous nursing hotline and reported May's hostile behavior towards plaintiff. In regards to this, plaintiff had a discussion with Maylynn West, the Director of Nursing. During this meeting Trish Lanphere was present. West stated to plaintiff and Lanphere that "Cathie May is just Cathie and this is just the way she is" and that "Cathie just needs to retire." This is the second time plaintiff's concerns were disregarded by both management and Human Resources.

5.6     On October 31, 2018, plaintiff spoke to Earnhardt privately in the equipment room to discuss some concerns about personal issues between Audris Korth and plaintiff affecting their work relationship and staffing issues. The plaintiff trusted the relationship with Earnhardt and that she would help the situation in the department. The conversation ended with Earnhardt attempting to ease plaintiff's worries by explaining the process of daily assignments and staffing. Plaintiff thought it was safe to discuss her concerns with Earnhardt without fear of repercussion due to their

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

relationship outside of work. However, Earnhardt gave plaintiff misguided trust and seemed to take a harder stance on plaintiff as an end result to the discussion.  After this private discussion Earnhardt wrote two coaching records regarding this event that she had with the plaintiff. Subsequently, the plaintiff found herself in a meeting with Maylynn West, Mark Blaney, and Earnhardt. Plaintiff was asked what happened between Korth and plaintiff and was then told she was "required to trust her charge nurses." Plaintiff told them that she feared retaliation for talking about Korth at this meeting. Plaintiff got teary eyed and West told plaintiff that she was "concerned that plaintiff was not the right fit for St. Clare's emergency department." Until the disclosure of the romantic relationship between the plaintiff and Lanphere there were no incidents or concerns about the plaintiff's ability or fit into the St. Clare's emergency department.

5.7     From that meeting, the plaintiff personally concluded that plaintiff needed to keep her concerns to herself or learn to handle them directly with the staff involved.  The plaintiff began to feel victimized and bullied, creating a hostile work environment based on her sexual orientation.

5.8     The fourth time plaintiff felt she had a genuine concern with someone was with Robert Willard in March of 2019. Plaintiff expressed insecurities about working in Fast Track the next day to the night shift charge nurse, Venetta Pearson.  Pearson decided to give plaintiff some time to build confidence and switched her assignment out of Fast Track. The next day, when Willard took over the charge nurse assignment, he approached plaintiff visibly angry and demanded to know if plaintiff had changed the schedule. Plaintiff told him she had not.  Plaintiff was in the middle of taking care of a critical patient and told him she could not talk at that moment. His response was "you will talk to me now." Plaintiff stated she needed to take the IO gun to a CPR in progress that was taking place. Later, plaintiff and Willard continued this conversation and told Willard that she felt he was hostile, aggressive, and often argumentative when she was talking to

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

him. He then stated this conversation needed to occur in front of Blaney and plaintiff agreed. They went to Blaney's office to discuss this. Plaintiff shared with Blaney concerns about how Willard had treated her regarding the Fast Track assignment as well as a concern regarding a patient that Willard had repeatedly referred to as "the Masturbator" both at the nurse's station and in the break room at shift change.   Willard openly discussed this patient as "the masturbator" in front of Blaney. Plaintiff told Blaney that she was offended by this and felt that it was inappropriate. Blaney response to the way Willard referred to this patient was that Willard was using the term masturbator as a "patient identifier." These concerns remained unaddressed because Blaney never asked to see plaintiff's concerns that were written down when plaintiff entered this meeting. No notes were taken and the meeting was done in 15 minutes. There was no coaching record in plaintiff's file for this encounter. This is just another example as to how the plaintiff's concerns were not being addressed or taken seriously. However, complaints about the plaintiff seemed to get the full attention from the administration regardless if the plaintiff was doing her job correctly or making sure patient care came first.

5.9     On April 18, 2019, plaintiff was pulled out of a Shared Governance meeting at St. Clare Hospital and asked to come back to Earnhardt's office for a meeting.  When plaintiff arrived, West was present for this meeting. Plaintiff was informed that two people had come forward with concerns regarding plaintiff. One complaint was from Chelsea Smith ER Tech that happened two months prior and the other was from Sania Marri. This is the meeting with Maylynn West the Nursing Director and Stephanie Earnhardt that West stated "they believe I have a good heart with good intent, but that my communication sucks." These complaints felt retaliatory in nature and the timing was suspicious. Plaintiff was later informed at the June 17th meeting with HR that Mendez

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

1  had looked into the comments made from West and Earnhardt and West both denied that this

2  statement was ever made.

3  5.10   Plaintiff was asked about the incident with Smith and told Earnhardt and West that she did

4  not remember the specifics but that it had something to do with Smith doing something out of her

5  scope of practice and that plaintiff had addressed this issue in front of Kathy Lewis who was charge

6  at the time. Plaintiff informed Smith that the call she made was for plaintiff to make as the RN and

7  not within the ERT scope of practice. Plaintiff chose to do this in front of Lewis because Smith

8  had interacted inappropriately with plaintiff in the past. Smith's voice began to get louder so

9  plaintiff started backing into room 4 to separate herself from Smith. Plaintiff told Smith that when

10  she was done sitting with a patient they could talk some more but that plaintiff wanted to reinforce

11  that she was the person who was responsible for making the patient care decision that she

12  did. Smith continued to talk loudly about this, Lewis looked up and asked if there was a

13  problem.  When Smith and plaintiff spoke later that day, plaintiff told her that she felt like she

14  always gave plaintiff snappy or nasty responses. An example of this is when plaintiff have asked

15  Smith if she is working as a tech or a HUC and Smith responded with "does it matter?" Plaintiff

16  told Smith that plaintiff was told to go to management about this but that she never did. Smith's

17  response was that "they wouldn't believe you anyways." Smith told plaintiff that she feels like

18  plaintiff was "intimidated of her relationship with Trish." At that point plaintiff explained to Smith

19  that Lanphere and plaintiff have had some medical issues and gave her an explanation about how

20  Lanphere and plaintiff felt at work since Lanphere stepped down from being a charge

21  nurse. Plaintiff told Smith that they were just trying to come to work, do their best, and go

22  home. They hugged and plaintiff felt that the issue had been resolved.

23

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

5.11    The incident with Marri, plaintiff was a strong supporter of her as a new nurse. Marri shared some of her struggles at work and fitting in. Plaintiff often defended Marri when she heard people complain about her telling them she has the biggest heart and that she is a good person. It has, however, been difficult to follow her patient assignments. For example, the plaintiff had to put patients on monitors and blood pressure cuffs, change soiled linen, address pain concerns, and clean up the patient's environment to prevent fall hazards after taking over her assignment. Plaintiff's next patient safety concern was when Marri put a soiled commode from a C-Diff patient back into the clean utility. Marri said that she saw an empty red bagged toilet basin and thought that it was clean. Plaintiff went to get the commode and clean it but Marri said that she would. Plaintiff was frustrated with this infection control concern, but felt she handled the situation tactfully. Plaintiff addressed the concern directly with the person involved but also made mention of it to her charge nurse. The plaintiff's charge nurse told plaintiff to write an email to management but plaintiff was afraid to do so out of fear of retaliation.

5.12    On April 23, 2019, plaintiff was again brought into the office with management stating they have received two other complaints about her since April 18, 2019. These complaints were regarding incidents that occurred over a month prior. The week before this incident took place Trish Lanphere, Cory Seesz, Halei Steiling, and plaintiff were in the break room. Lanphere and plaintiff were told that their relationship was being made an issue by staff again. Seesz and Steiling explained that Lanphere and the plaintiff would be split across the ER again on purpose until everything calms down. Steiling stated that someone was complaining to management about Lanphere and plaintiff's assignments and stating that it was reported that Lanphere and plaintiff "go to the bathroom together." At this time there had been an ED charge nurse and ED pharmacist in a romantic relationship, two ED nurses that were a traveling couple, and a nurse and ERT

COMPLAINT FOR DAMAGES
PAGE 8

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

involved in a relationship. There had also been heterosexual couples working in other areas of the hospital; however, no complaints were made about those particular couples. It was blatant sexual discrimination based on sexual orientation. One incident involved a complaint from Halei Steiling as charge nurse while Lanphere and plaintiff were on surge. Lanphere, Laura Weeks, and plaintiff were all working at the time of the incident in Fast Track. Plaintiff informed management of this and asked if they had interviewed Weeks about her perception of the event. Their response was "no." The incident involved a visitor that was the mother of a patient. The plaintiff had made an exception for the no visitor policy and allowed the mother into Fast Track because the patient was altered and was a poor historian. Weeks, not knowing why the mother was back there, asked Steiling to ask the mother to leave. Plaintiff found the mother leaving Fast Track and asked her where she was going. The mother told plaintiff she had been told she could not stay in the room with the patient. She was elderly and walked with a cane. Plaintiff apologized for the misunderstanding and brought her back to the room since they were waiting to hear back from the patient's surgeon from St. Joseph Hospital. Plaintiff asked who had told the mother to leave. Lanphere had told Steiling that the patient's family in question was not her patient and to ask plaintiff about it. Steiling, however, did not ask plaintiff. Plaintiff asked Steiling to step into the hall and quietly asked her why the mother was asked to leave without anyone asking the plaintiff as the primary nurse as to why she was there. Plaintiff informed Steiling of her reasoning for having the mother in the room as a safety concern because the patient was altered and was a poor historian. Steiling never expressed any concerns to plaintiff about her behavior or about her decision making for this event.

5.13    May 7, 2019 plaintiff was sitting at the nurse's station with Katrina Raffensberger in the AM when Steiling came up to plaintiff and was rubbing her back. The plaintiff was very

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

uncomfortable and the touching was not welcomed. The plaintiff was frozen and continued to look at the computer screen. Steiling tried to talk to plaintiff regarding non work related things while rubbing her back. The plaintiff did not know what to say so she turned her head towards Katrina in the hopes to make the interaction stop. At this time the plaintiff was being investigated due to a recent complaint that involved Steiling and the plaintiff. When the plaintiff met with HR on June 17th this was sexual touching brought to Mendezs attention.

5.14     Comments on one of plaintiff's evaluations state, "Learns and practices safety as a personal priority in your work. Address potential safety concerns. Willing to address unsafe behaviors in others. Commits to team safety." In several instances when plaintiff was proactively addressing potential safety concerns she was later criticized by management for this.

5.15     Defendant also called into question plaintiff's behavior and RICE values month(s) after the alleged violation, but only did so after she started to complain of discrimination based on her sexual orientation, in clear retaliation of her protected activity complaints. Plaintiff was repeatedly targeted and intimidated in these situations and held to a different standard of behavioral expectations than her coworkers.

5.16     On May 14, 2019, plaintiff attended TNCC with Sania Marri and Chelsey Hayes. Plaintiff felt uncomfortable during TNCC because her two coworkers were not interacting with her. The plaintiff was purposely not talked to during this course by her coworkers and later asked Hayes the reason for the silence. Hayes explained to plaintiff that Marri had told her about an incident between plaintiff and Marri in detail and it made her uncomfortable to speak to plaintiff in front of Marri at the course.

5.17     On May 24, 2019 plaintiff brought to Mark Blaney's attention that Marri had also spoke negatively about her to Susie Urabeck, a new charge nurse in the department. This was brought to

COMPLAINT FOR DAMAGES
PAGE 10

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

plaintiff's attention when they were off shift. Plaintiff informed Blaney that multiple people reported to her that Marri talked to them regarding an ongoing investigation and it was creating an uncomfortable and hostile working environment for plaintiff. When plaintiff requested that this behavior be stopped and addressed, the end result was Blaney stating that his findings were that "Sania was seeking guidance from her fellow staff members." Plaintiff asked Blaney why management instructed her to not speak of an open investigation but that he did not relay this information to Marri. Blaney's response was "I do not recall." Again, the plaintiff was held to a different standard than multiple co-workers.

5.18   On May 21, 2019, plaintiff was placed as RN 4 but only had two patients since three patients were being cared for by an inpatient nurse. Katrina Raffensberger was RN 5 and was busy with a sick pediatric patient who was being transferred to MBCH. There was a septic patient roomed in Raffensberger's other room. The plaintiff went in and provided all care and coordination with two other inpatient providers. When Raffensberger came in to touch base the plaintiff told her that she would just sign up for the patient since one of them was going to have two patients and one would have three patients. Korth came up to relieve plaintiff for a break and when she got back she said "you will be giving Katrina back room 17" while plaintiff was on the red mat drawing up insulin. Plaintiff told her that she only had two patients and had already done all the work. Robert Willard then reminded plaintiff very loudly over voicera what rooms RN 4 had. Neither Korth nor Willard were charge nurses on this particular day. Willard was RN 1 across from where Raffensberger and plaintiff were working. This became an issue that again went to management. Plaintiff again believed she was being targeted, even though she was being a team player by providing prompt and efficient care to this patient who was septic. When management touched base with plaintiff regarding this incident it was at the HUC desk and was openly talked about

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

1   while Willard was on the RN 3 computer which was within hearing distance from where plaintiff

2   was sitting. This is why the plaintiff was unable to speak of the actual concerns related to this

3   incident.

4   5.19    On June 11, 2019, plaintiff submitted a discrimination complaint to Lois Erickson, COO

5   and Maryann Mendez, HR of St. Clare Hospital.  On the next day, June 12, 2019, plaintiff was

6   informed that she was being investigated for a phone call that took place on June 4, 2019 after

7   work. A nurse named Steiling stated that plaintiff had called her and demanded her to write an

8   email stating that she was not a problem to work with. During this investigation, it was learned

9   that Steiling made this phone call to plaintiff. On June 4, 2019, Steiling complained about plaintiff

10  working on the same shift as her girlfriend, even though they worked in different areas of the

11  Emergency Department and were always professional.   When plaintiff got home she texted

12  Steiling stating "I'm uncomfortable with everything I heard today. I don't understand it. It makes

13  me sick inside." Halei then called plaintiff's cell phone and had a conversation on speaker phone

14  with both plaintiff and her partner Lanphere. The call lasted 1 hour and 5 minutes. In this

15  conversation Steiling stated that "she would love to have her boyfriend at work to have her back

16  when needed." Lanphere became upset and yelled at Steiling for how inappropriate that statement

17  was. Steiling begged Lanphere and plaintiff for their friendship and stated that she would do

18  anything to have them back in her life. Plaintiff asked multiple times for her to just come to work

19  and be professional. Steiling stated that "she could not do that because it was too awkward" and

20  that she "missed us and wanted it to be the way it used to be" and that she "used to like coming to

21  work to work with us." Steiling then stated that plaintiff "wasn't a problem at work and that she

22  had her back." Steiling kept begging both the plaintiff and Lanphere "to trust her, and that she had

23  made mistakes and that she was sorry." Steiling asked plaintiff "what she could do to earn our trust

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

back." Lanphere's reply was to write an email for the union stating what she had just said. The call ended with both Lanphere and plaintiff begging Steiling to just be professional with us when at work.

5.20    On June 13, 2019, plaintiff had to drop out of shared governance due to management not working it into her FTE like they did for Seesz, the past ED representative.  Management wanted plaintiff and her partner Lanphere to come in on their day off and told them that they would have to waive any overtime until they hit the 40 hour mark, no matter how many hours they worked in a day. Plaintiff also stepped down from UBC due to the multiple unsettling interactions that she and Lanphere had with Liz Wolkin. They both tried to get involved and make the department better, however, all of the double standards and the constant hostile work environment surrounding plaintiff's relationship with Lanphere made them afraid to participate further. The reason Lanphere stopped precepting new employees was because of the hostile work conditions. Despite Lanphere repeatedly telling Wolkin that she did not want to precept, Wolkin continued to ask Lanphere to precept on almost every interaction they had. Wolkin would pair new hires with Lanphere after cornering her in the break room and telling Lanphere that she had no one to precept this person.

5.21    On June 17, 2019, Lanphere was in a meeting with Maryann from HR for 2 hours to go over the discrimination complaint made by plaintiff and Lanphere. Plaintiff's meeting followed Lanphere's and lasted 3 hours. At this time plaintiff and Lanphere were both reassured that all the co-workers involved would be informed not to speak of the investigation, there would be no retaliation and that the hostile work environment would cease.

5.22    On June 20, 2019, Audris Korth and Juliana Trujillo cornered Tommi Johnson in a patient room and spoke to her regarding the plaintiff. Johnson sent an email to Human Resources and Lois

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

Erickson the COO on July 4, 2019 regarding her feelings of the incident and the manner of which it took place.

5.23    On July 4, 2019, Trish was informed by Johnson during her shift of the incident involving Korth and Trujillo. Johnson stated that she was cornered in one of the ED rooms that she was cleaning by the two employees. Johnson stated that she was intimidated and uncomfortable with the interaction on June 20, 2019.

5.24    On July 8, 2019, plaintiff was working as RN 4. Juliana Trujillo was one of the ERTs. The plaintiff had to notify the MD that the IV was prematurely pulled and then have the pharmacist put in a new verbal order for another antibiotic. Plaintiff later discharged the patient. When everything calmed down with plaintiff's patients, she went up to Trujillo and started the conversation with "thank you for everything that you have done today." Plaintiff then asked her if "in the future she could talk to me before pulling an IV so I can make sure no other IV medications are due." Trujillo blankly looked at the computer and she said "what more do you want from me?" Plaintiff replied that she wanted her to know it was ok to come up and talk to her. Trujillo then walked out of the department upset. Plaintiff went outside with Trujillo and she was crying. Trujillo stated that she had a terrible day and that she was yelled at by another ERT. She kept crying and talking about how she looked today and saw that Lanphere and the plaintiff took her off of Facebook. She claimed that Lanphere did not talk to her the last two days and that Lanphere hugged David Clark and not her on one of the mornings. Plaintiff assured her that the removal of Facebook had nothing to do with work. Trujillo stated that plaintiff had communicated with her professionally both days but that Lanphere was not talking to her. Plaintiff asked Trujillo if she wanted to talk to Lanphere and she said no. Plaintiff told Trujillo that Lanphere was hurt from what had recently been brought to their attention. She asked what it was about and plaintiff informed Trujillo that it was an HR

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

matter and to ask HR if the three of them could all talk after and get back on the same page. Plaintiff explained to Trujillo that she and Lanphere both wanted to come to work and be professional. Trujillo then accused plaintiff of turning her in for doing a pregnancy test on herself.

5.25    On July 9, 2019, Lanphere and plaintiff went to Earnhardt and Blaney regarding Susie Urabeck's partner Dee Shirtcliff and again expressed concerns about the text messages plaintiff received from her former partner and the rumors Urabeck had been spreading around the department pertaining to plaintiff's former relationship. Plaintiff mentioned her concern that Urabeck was a night shift charge nurse and part of the leadership team. Plaintiff asked that Urabeck be held to a professional standard at all times when dealing with anything regarding her team. Earnhardt's response was that "personal relationships just happen in our work environment" and "management has no control over what is happening in the department" and "issues like this create real barriers" and that "management cannot tell us that people will never talk about us." Earnhardt also stated that "because these concerns that we are bringing forward are personal in nature that it stops management from addressing them at work." Earnhardt then finished by stating that "she goes home and talks to her husband about work" and "it was the same as Urabeck going home and talking to Shirtcliff about work and how the new level set states that there is to be no more non-employees allowed in the back of ED." Plaintiff finished by asking "even if it makes Susie's new partner Dee reach out to me via text?" Plaintiff informed Earnhardt of the severity of the situation, that she feared for her safety and that the former relationship was emotionally and verbally abusive for three years. Management was made aware of plaintiff's safety concern. Management stated that "if we were to get a restraining order that we would cross that bridge when it came to it. Other than that there was nothing more they could do except the department level set about visitors."

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

5.26   When a trauma patient first arrived the trauma was called overhead 15-minutes prior by plaintiff's charge nurse. Once plaintiff confirmed with the MD that she wanted to call it a modified trauma plaintiff tried to broadcast it to the department. Due to the patient thrashing around and the lack of team members in the room plaintiff was concerned that she had not broadcasted the arrived trauma patient correctly. The patient came in with no IV access so Lanphere was trying to obtain one. Julie, the trauma coordinator came in to offer assistance and Lanphere asked her to hold the patients arm still while she worked on an IV.  At that point Lanphere said "where is everyone?" During this time Wolkin came into the room while they were trying to figure out if the trauma had been re-called over head or not like Dr. Scott requested. At one point Wolkin heard the plaintiff state "I needed an ERT." This was because the plaintiff was going to be going to outpatient CT and did not feel it was safe to go alone with a combative, altered patient. Wolkin kept coming in and out of the room but at no point was she in the room from start to finish.

5.27   Later that day the plaintiff was called into management's office by Earnhardt. Earnhardt informed plaintiff that Wolkin came to her with concerns regarding comments made by plaintiff while in her trauma patient's room. Earnhardt stated that Wolkin reported plaintiff had enough support in the room with the MD, Julie and Lanphere however, plaintiff was asking where the ERTs were. Wolkin took the entire situation that she momentarily observed out of context. Instead of Wolkin offering support or finding someone who was free to assist plaintiff she turned it into a negative and unprofessional encounter that she thought she was witnessing. Plaintiff was inquiring about ERTs due to having to go to outpatient CT. Wolkin was unaware that CT had a procedure on their table and that plaintiff would have to go to the other end of the hospital with this patient. Plaintiff was not even sure if the CT would be obtainable due to the patient being so combative. When plaintiff shared this with Lanphere, Lanphere was able to confirm the above sequence of

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

1    events and confirmed at no time was anything inappropriate said regarding the ERTs. Lanphere

2    recalled being the one who asked where everyone was due to lack of ED personnel in the room.

3    5.28    When plaintiff was in Earnhardt's office she was also questioned about the Kaylynn Berry

4    and Wolkin incident that took place. Plaintiff was informed by Earnhardt that she would have a

     coaching record in her file regarding this matter. Plaintiff shared her concerns about being followed

5    around the ED by an ERT in a bulling and harassing nature. Plaintiff told Earnhardt that she was

6    followed by the ERT into a single stall bathroom just for this ERT to prove a point. Earnhardt said

7    that Berry's response was that plaintiff asked her to show plaintiff where it was written that the

8    plaintiff could not move an IV cart. Earnhardt stated to plaintiff "if you have any more outbursts

9    that it will be grounds for termination since you have a final written warning in your file." Later

10   that day plaintiff asked security if they had the hallway and bathroom on camera. It was confirmed

11   that they did and only held the video feed for 30 days. Plaintiff was told July 18, 2019 that  HR

12   requested the video footage and that they are going to review it. Plaintiff asked HR to preserve this

13   video footage. 5On July 17, 2019, Lanphere and plaintiff sent an email requesting a meeting with

14   HR due to not hearing anything regarding their concerns that had been brought forward. Plaintiff

15   expressed concerns that she was still dealing with false allegations, rumors, hostile work

16   environment, including harassing and intimidating behaviors from fellow staff members.

17   5.29    On July 18, 2019, Lanphere went to HR to pick up her last 7 years of evaluations, all of

18   which consisted of multiple "exceeds expectations and significantly exceeds expectations."  This

19   was a drastic contrast to this 2018-2019 evaluation that has "meets expectations."  Plaintiff and

20   Lanphere went to HR and Maryann started talking regarding scheduling a follow up meeting

21   regarding their discrimination complaints.  All three ended up in the back room where Maryann

22   stated that so far "the investigation has turned up a lot of he said, she said." Plaintiff and Lanphere

23

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

were both informed that Trujillo was denying the entire event that happened with Johnson. Lanphere became upset and almost walked out of the back room. Another meeting was scheduled for July 23, 2019, which was later rescheduled.

5.30    On July 24, 2019, HR met with Susie Urabeck.    Maryann informed plaintiff that management would be speaking to Urabeck July 25, 2019. On July 25, 2019 Management terminated Susie from her ED Charge Nurse position and employment with CHI.

5.31    On August 2, 2019, Maryann emailed plaintiff a copy of open ED positions throughout the CHI organization. The plaintiff was in a two year residency contract that HR and management were willing to allow the plaintiff to break early without having to repay St. Clare. At the time that the plaintiff was emailed a list of all open ED positions that were within the CHI system. There was no day shift .9 FTE that were similar to the plaintiff's current schedule. This is the second time that HR and management has encouraged the plaintiff to leave the SCH ED. The first instance was in August 2018 and the ED management team had the plaintiff interview with the SCH ICU manager the day before the ICU residency was to start. The plaintiff was asked to give an answer by the end of day as to if she would accept the position in the ICU. The goal of this option was to allow Lanphere to stay in her current charge nurse position within the ED.

5.32    After reporting discrimination, plaintiff was subjected to retaliation.  The plaintiff's 2019 yearly evaluation was worse than the two done the previous year. This was after the plaintiff complained of sexual orientation discrimination to St. Clare leadership and management. On August 14, 2019, plaintiff received her yearly evaluation where she received an overall rating of "below expectations." Under the section "manager evaluation to employees behavior aligning with our core values" Mark Blaney referenced plaintiff's final written warning related to her behaviors with her coworkers. During plaintiff's evaluation meeting Blaney told plaintiff two different times

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

about what a great nurse she was. Plaintiff stopped him both times, because this statement was inconsistent with her evaluation. Plaintiff spoke with the Barbara Friesin WSNA union representative and on August 16, 2019, she filed another grievance regarding her evaluation. Plaintiff also had a letter of recommendation from Corey Seesz, Charge RN, and written April 25, 2019. A few examples from this letter are that plaintiff "raised the bar of what was expected from a newer nurse, that she helped her peers rise and worked seamlessly with other nurses providing support".

5.33    On September 2019, the hospital created a new Non-Fraternation 262 policy in response for the relationship between the plaintiff and Lanphere. This policy had not been created for heterosexual couples within the hospital organization prior to the plaintiff and Lanphere disclosing their relationship.  This is alone is a clear act of discriminatory behavior between a same sex couple. When administration gave this to the plaintiff she felt victimized and singled out for her relationship. She felt as if she was being attacked and targeted by administration.

5.34    The plaintiff and Lanphere were singled out due to our sexual orientation. Plaintiff has been accused and investigated multiple times throughout her employment with St. Clare Hospital. However, some serious concerns the plaintiff has brought forward were never investigated by Earnhardt and Blaney when brought to their attention. For example, the plaintiff went into Earnhardt and Blaney's office again to report a concern with a new nurse Monica Lim on November 14, 2019. In this meeting plaintiff stated she had fears that a new nurse was treating her differently after going out socially with the nurses that were listed above. Earnhardt said there was nothing they can do. This was due to management not having control on what happens personally when people are on their personal time. This was something she has said to plaintiff before and that was documented in the August 20th concern to HR. Plaintiff stated how her day was harder

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

1
2
3
4
5
6
7
8

with no NIOs done on any of her patients from one nurse in particular. Plaintiff also had no support from the nursing team due to the clique on the Nov. 13th shift. Plaintiff voiced her concern with being on a final written status and how to navigate the new nurse treating her differently and the growing clique within the department. Plaintiff stated that she did not know what to do, asking for Blaney's help and guidance. Blaney looked at plaintiff and stated that he did not know what to do either. Earnhardt became ill in the meeting and the meeting was cut short due to her having her head down on her desk talking about how she was very light headed. There was no further follow through with this conversation.

9
10
11
12
13
14
15
16
17
18
19
20
21
22

5.35    The plaintiff was put on administrative leave on November 20, 2019 while being investigated for a patient safety concern in regards to "popping" a tourniquet off a patient arm while another RN was in the middle of accessing an IV on a patient. The complaint came from Monica Lim on November 14, 2019 incident above. The plaintiff did not recall removing a tourniquet but if this was the case, the punishment of being put on unpaid administrate leave was an extreme reaction to an incident that would normally be dealt with as an educational moment. Blaney accused the plaintiff of inappropriate behavior with Lim. Plaintiff was informed at this time that she may be terminated found guilty of the accusations due to her final written warning status. This patient that the plaintiff was being accused of removing a tourniquet on later died in the ICU. The patient weight on admission to the ED was recorded in error and the patient was given a heparin bolus that was for two times her weight. This patient continued to be on titrated heparin that was originally weight based. The plaintiff was informed by the ICU charge nurse that the patient expired related to DIC complications. The ED nurse Lim, Willard and that day shift charge nurse maintained their employment status at St. Clare following this patients death.

23
24

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

5.36    Nursing staff continued treating plaintiff in a hostile manor.  Plaintiff was wrongfully terminated December 6, 2019 after her many complaints of discrimination based on her gender, and sexual orientation that impacted her working relationships with her peers.  The administration failed to address the concerns of the plaintiff or help reduce the amount of hostility within the workplace. The plaintiff was outcasted, discriminated against, and bullied even though she did her job appropriately while maintaining patient safety at the forefront of her job.

## VI.  CAUSES OF ACTION

**6.1    Hostile Work Environment (RCW 49.60 et. seq.) (Sexual Orientation, Gender):** Plaintiff incorporates all preceding paragraphs as though fully set forth herein as a proximate cause of Plaintiff's injuries.

**6.2    Disparate Treatment (RCW 49.60 et. seq.) (Sexual Orientation, Gender):** Plaintiff incorporates all preceding paragraphs as though fully set forth herein as approximate cause of Plaintiff's injuries.

**6.3    Unlawful Retaliation (RCW 49.60 et. seq.) (Sexual Orientation, Gender, and Reporting Discrimination):** Plaintiff incorporates all preceding paragraphs as though fully set forth herein as a proximate cause of Plaintiff's injuries.

**6.4    Termination in Violation of Public Policy.** Plaintiff incorporates all preceding paragraphs as though fully set forth herein as a proximate cause of Plaintiff's injuries.

**6.5    Negligent Infliction of Emotional Distress.**  Plaintiff incorporates all preceding paragraphs as though fully set forth herein as a proximate cause of Plaintiff's injuries

## VII.  PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief as follows:

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

a.      For such general and/or special damages as shall be established at time of trial herein; and for such attorneys' fees, interest, costs, and such other and further relief as shall be allowed by law or deemed just and equitable.

Dated this _____ day of October 2020.

**LAW OFFICE OF THADDEUS P. MARTIN**

By: _____
Thaddeus P. Martin, WSBA 28175
tmartin@thadlaw.com
Attorney for Plaintiff

COMPLAINT FOR DAMAGES
PAGE 22

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

# Exhibit A

 **CT Corporation**

**Service of Process Transmittal**
01/06/2021
CT Log Number 538852835

**TO:**  Elizabeth Mcnamee
CommonSpirit Health
198 INVERNESS DR W
ENGLEWOOD, CO 80112-3637

**RE:**  **Process Served in Washington**

**FOR:**  CommonSpirit Health  (Domestic State: CO)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Stephanie Mykland, etc., Pltf. vs. Common Spirit Health, etc., Dft. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Cover Sheet(s), First Set of Requests, Certification(s), First Set of Interrogatories |
| **COURT/AGENCY:** | Pierce County Superior Court, WA Case # 202084081 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - 12/06/2019 |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Olympia, WA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/06/2021 at 15:19 |
| **JURISDICTION SERVED :** | Washington |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after the service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Thaddeus P. Martin Law Office of Thaddeus P. Martin 3015 Bridgeport Way West University Place, WA 98466 253-682-3420 |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/07/2021, Expected Purge Date: 01/12/2021 |
| | Image SOP |
| | Email Notification,  Karen Dawson  KarenDawson2@catholichealth.net |
| | Email Notification,  Diane Skinner  dianeskinner@catholichealth.net |
| | Email Notification,  Vonda Zollo  vondazollo@catholichealth.net |
| | Email Notification,  Dayana Lopez  dayanalopez@catholichealth.net |
| | Email Notification,  Darla La Clair  darlalaclair@catholichealth.net |

 **CT Corporation**

**Service of Process Transmittal**
01/06/2021
CT Log Number 538852835

**TO:**    Elizabeth Mcnamee
CommonSpirit Health
198 INVERNESS DR W
ENGLEWOOD, CO 80112-3637

**RE:**    **Process Served in Washington**

**FOR:**    CommonSpirit Health  (Domestic State: CO)

Email Notification,  Elizabeth Mcnamee  elizabethmcnamee@catholichealth.net

**REGISTERED AGENT ADDRESS:**    C T Corporation System
711 Capitol Way S
Suite 204
Olympia, WA 98501
866-331-2303
CentralTeam1@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

1

2

3

4

5

6

**SUPERIOR COURT FOR THE STATE OF WASHINGTON**
**COUNTY OF PIERCE**

7

8

STEPHANIE MYKLAND, Individually,                    NO.

Plaintiff,                                          **SUMMONS**

9

10

v.

11

COMMON SPIRIT HEALTH, doing business as CHI FRANCISCAN HEALTH and as SAINT CLARE HOSPITAL

12

13

Defendant.

14

**TO THE DEFENDANT:**

15

16

    A lawsuit has been started against you in the above-entitled court by Plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

17

18

19

20

21

22

23

    In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within 20 days after the service of this Summons within the State of Washington or 60 days if served outside of the State of Washington, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what it asks for because you have not responded. If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

24

SUMMONS
PAGE 1

You may demand that the Plaintiff file this lawsuit with the court.  If you do so, the demand must be in writing and must be served upon the person signing this Summons.  Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the court, or the service on you of this Summons and Complaint will be void.

      If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

      This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

      Dated this _____ day of October, 2020.

By _____

Thaddeus P. Martin, WSBA #28175
Attorney for Plaintiff

SUMMONS
PAGE 2

Law Office of Thaddeus P. Martin
3015 Bridgeport Way West
University Place, WA 98466
Phone: 253-682-3420; Fax: 253-682-0977

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

November 16 2020 2:44 PM

KEVIN STOCK
COUNTY CLERK
NO: 20-2-08408-1

## SUPERIOR COURT OF WASHINGTON FOR PIERCE COUNTY
## CASE COVER SHEET / CIVIL CASE

Case Title STEPHANIE MYKLAND VS. COMMON SPIRIT HEALTH DBA CHI FRANCISCAN    Case Number 20-2-08408-1

Atty/Litigant THADDEUS PHILLIP MARTIN IV    Bar# 28175    Phone (253) 682-3420

Address 3015 Bridgeport Way West

City UNIVERSITY PLACE    State WA    Zip Code 98466

Email Address _____

Please check one category that best describes this case for indexing purposes.

*If you cannot determine the appropriate category, Please describe the cause of action below. This will create a Miscellaneous cause which is not subject to PCLR 3.*

**APPEAL / REVIEW**
___Administrative Law Review (ALR 2) REV 6
___Civil, Non-Traffic (LCA 2) REV 6
___Civil, Traffic (LCI 2) REV 6
___Land Use Petition (LUP 2) LUPA

**CONTRACT / COMMERCIAL**
___Breach of Contract, Commercial Non-Contract
    or Commercial-Contract (COM 2) STANDARD
___Third Party Collection (COL 2) REV 4

**JUDGEMENT**
___Judgement, Another County or Abstract
    Only (ABJ 2) Non PCLR
___Transcript of Judgement (TRJ 2) Non PCLR
___Foreign Judgement Civil or Judgement,
    Another State (FJU 2) Non PCLR

**TORT / MOTOR VEHICLE**
___Death, Non-Death Injuries or Property
    Damage Only (TMV 2) STANDARD

**TORT / NON MOTOR VEHICLE**
___Other Malpractice (MAL 2) COMPLEX
✓ Personal Injury (PIN 2) STANDARD
___Property Damage (PRP 2) STANDARD
___Wrongful Death (WDE 2) STANDARD
___Other Tort, Products Liability or Asbestos
    (TTO 2) COMPLEX

**PROPERTY RIGHTS**
___Condemnation (CON 2) STANDARD
___Foreclosure (FOR 2) REV 4
___Property Fairness (PFA 2) STANDARD
___Quiet Title (QTI 2) STANDARD
    Unlawful Detainer / Eviction (UND 2) REV 4
___Unlawful Detainer / Contested (UND 2) REV 4

**OTHER COMPLAINT OR PETITION**
___Compel/Confirm Bind Arbitration, Deposit of
    Surplus Funds, Interpleader, Subpoenas, Victims'
    Employment Leave, or Wireless Number Disclosure,
    Miscellaneous (MSC 2) REV 4
___Injunction (INJ 2) REV 4
___Malicious Harassment (MHA 2) Non PCLR
___Meretricious Relationship (MER 2) REV 4
___Minor Settlement/No Guardianship (MST2) REV 4
___Pet for Civil Commit/Sex Predator (PCC2) REV 4
___Property Damage Gangs (PRG 2) REV 4
___Relief from Duty to Register (RDR) REV 12
___Restoration of Firearm Rights (RFR 2) REV 4
___Seizure of Property/Comm. of Crime (SPC2) REV 4
___Seizure of Property Result from Crime (SPR2) REV 4
___Trust/Estate Dispute Resolution (TDR2) REV 12
___Restoration of Opportunity (CRP) REV 4

**TORT / MEDICAL MALPRACTICE**
___Hospital, Medical Doctor, or Other Health Care
    Professional (MED2) COMPLEX

**WRIT**
___Habeas Corpus (WHC 2) REV 4
___Mandamus (WRM 2) REV 4
___Review (WRV 2) REV 4
___Miscellaneous Writ (WMM 2) REV 4

**MISCELLANEOUS** _____