HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEPHANIE MYKLAND,

    Plaintiff,

    v.

COMMONSPIRIT HEALTH, d/b/a CHI FRANCISCAN HEALTH and as SAINT CLARE HOSPITAL,

    Defendant.

Case No. 3:21-cv-05061-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss and for a More Definite Statement or to Strike Complaint (Dkt. # 7), Plaintiff's Motion to Strike (Dkt. # 19), and Plaintiff's Motion to Remand (Dkt. # 23). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, Plaintiff's motions to remand and strike are **DENIED**, and Defendant's motion to dismiss is **GRANTED in part** with leave to amend.

## II. BACKGROUND

Plaintiff Stephanie Mykland was a nurse at St. Clare Hospital in Lakewood, Washington. Dkt. # 17-2 ¶ 4.1. The hospital is owned and operated by her employer,

ORDER – 1

CommonSpirit Health ("CommonSpirit"). *Id.* ¶ 4.2. Initially, in March 2018, she was employed as an emergency room technician. *Id.* ¶ 5.3. Months later, she was offered a position as a registered nurse. *Id.* ¶¶ 5.3-5.4.

Before she accepted the position, Ms. Mykland disclosed that she was in a romantic relationship with a fellow female employee, Trish Lanphere. *Id.* Ms. Lanphere was a charge nurse and Ms. Mykland's supervisor. *Id.* They disclosed their relationship to Stephanie Earnhardt, who later told the couple that human resources allowed Ms. Lanphere to remain in her current position. *Id.* But shortly after, another employee complained that Ms. Lanphere was "displaying favoritism" towards Ms. Mykland. *Id.* Human resources then informed the couple that Ms. Mykland could no longer work while Ms. Lanphere was a charge nurse, resulting in Ms. Lanphere's stepping down from her position. *Id.*

Ms. Mykland's complaint contains a series of interpersonal disputes that she had with coworkers beginning in March 2018, when she was hired as an emergency room technician, until December 2019, when she was fired as a nurse. Dkt. # 17-2 ¶¶ 5.3-5.36. Sometimes, Ms. Mykland brought a dispute to human resources and management's attention. For example, on October 31, 2018, she spoke to Stephanie Earnhardt about her "personal issues" with another coworker, which affected her "work relationship" with that coworker and caused "staffing issues." *Id.* ¶ 5.6. And again, on May 24, 2019, Ms. Mykland informed her employer that another coworker "spoke negatively" about Ms. Mykland to a different coworker. *Id.* ¶ 5.17. Ms. Mykland does not explain how these various disputes relate to her complaint, and the Court need not summarize them all here. *Id.* ¶¶ 5.3-5.36.

In the end, Ms. Mykland alleges that she was discriminated against. Sometime before her 2019 annual evaluation, she "complained of sexual orientation discrimination to St. Clare leadership and management." Dkt. # 17-2 ¶ 5.32. She alleges that, in retaliation, she was given an overall rating of "below expectations." *Id.* Besides her poor

ORDER – 2

evaluation, she alleges that the hospital created the "Non-Fraternation [sic] 262 policy" in response to Ms. Mykland and Ms. Lanphere's homosexual relationship. *Id.* ¶ 5.33. She alleges that no such policy existed before she disclosed their relationship. *Id.* Finally, in November 2019, Ms. Mykland was put on administrative leave. *Id.* ¶ 5.35. She was being investigated for "popping" a tourniquet off a patient's arm, resulting in the patient's death. *Id.* She was terminated weeks later. *Id.* ¶¶ 5.35-5.36. On the other hand, the two other employees who had also been involved in the incident, one male and one female, "maintained their employment status."

On November 16, 2020, Ms. Mykland sued CommonSpirit in Pierce County Superior Court. Dkt. # 1-2. CommonSpirit later removed the action to this Court. Dkt. # 1. Ms. Mykland is suing CommonSpirit for sex discrimination and sexual orientation discrimination under the Washington Law Against Discrimination ("WLAD") and for wrongful termination and negligent infliction of emotional distress ("NIED").

CommonSpirit moves to dismiss the complaint. Dkt # 7. Ms. Mykland moves to remand. Dkt. # 23. Both motions are ripe and pending before the Court.

### III.   DISCUSSION

A.   **Motion to Remand (Dkt. # 23)**

Remand to state court is warranted, Ms. Mykland argues, because CommonSpirit has failed to meet its removal burden. Dkt. # 23 at 3-4. According to her, CommonSpirit cannot demonstrate that the amount in controversy here exceeds $75,000, and thus the Court lacks original jurisdiction. *Id.*

i.   **Legal Standard**

District courts have original jurisdiction of all civil actions where the amount in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states. 28 U.S.C. § 1332(a). A defendant may remove a civil action brought in a state court of which the district courts have original jurisdiction. 28 U.S.C. § 1441(a).

There is a strong presumption against removal jurisdiction. *Gaus v. Miles, Inc.*,

ORDER – 3

980 F.2d 564, 566-67 (9th Cir. 1992). To protect the jurisdiction of state courts, removal jurisdiction is strictly construed in favor of remand, and any doubt as to the right of removal must be resolved in favor of remand. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005); *Gaus*, 980 F.2d at 566. The party seeking a federal forum has the burden of establishing that federal jurisdiction is proper. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006).

"Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). The amount in controversy includes damages and, if authorized by statute or contract, attorney's fees. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)). To assess jurisdiction, a court may consider facts in the removal petition and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)).

### ii.     Diversity

The parties are, undisputedly, citizens of different states. Dkt. # 17 ¶¶ 11-13. Ms. Mykland appears to be a Washington citizen. *Id.* ¶ 11. CommonSpirit, a non-profit corporation incorporated in Colorado with its principal place of business in Illinois, is a citizen of those states. *Id.* ¶ 12; *see also* Dkt. # 17-4. CommonSpirit has thus established diversity of citizenship.

### iii.    Amount in Controversy

Ms. Mykland argues that there is no evidence that the controversy here exceeds $75,000. Dkt. # 23 at 3-4. Because her complaint does not demand a dollar amount, Dkt. # 17-2, it is not facially apparent that the jurisdictional requirement is met. As the

ORDER – 4

removing party, CommonSpirit must prove by a preponderance of the evidence that more than $75,000 is at stake. The Court finds that CommonSpirit has met its burden.

Should Ms. Mykland prevail on her claims, CommonSpirit argues that its potential liability could be substantial. Dkt. # 26 at 3-9. It identifies two types of potential relief, "general and/or special damages" and attorney's fees.[1] To assess the amount in controversy, the Court may consider these amounts because Ms. Mykland brings claims under the WLAD, Dkt. # 17-2 at 26, which permits her to recover damages and attorney's fees. RCW 49.60.030(2); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018) ("[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails.").

CommonSpirit argues that Ms. Mykland stands to recover great sums under her WLAD claims. Jury verdicts in similar discrimination cases, it says, have ranged from $85,000 to millions of dollars in emotional stress damages alone. Dkt. # 26 at 4-7. The Court may consider such evidence. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("In determining the amount in controversy, the district court properly considered . . . emotional distress damage awards in similar age discrimination cases in Washington."). Reviewing CommonSpirit's jury verdict evidence, the Court agrees that many of the cited cases are factually similar to this one and that the jury awards for emotional distress damages in those cases have indeed exceeded $75,000. *See, e.g.*, Dkt.

---

[1] In her motion to remand, Ms. Mykland concedes, apparently for the first time, that she is not seeking lost wages. Dkt. # 24 ¶ 2. Initially, CommonSpirit based its notice of removal on lost wages, relying on them to show that the amount in controversy requirement was met. Dkt. # 17 ¶¶ 19-23. In general, events occurring after removal that "reduce the amount recoverable, whether beyond the plaintiff's control or the result of h[er] volition," do not oust a court of jurisdiction once jurisdiction has attached. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938). Thus, a plaintiff's post-removal stipulation, affidavit, or amendment reducing a claim below the jurisdictional threshold does not deprive a court of jurisdiction. *Id.* at 292. But the Court need not determine whether to credit Ms. Mykland's post-removal declaration. Even without lost wages, CommonSpirit has shown that the amount in controversy is met.

ORDER – 5

# 26-2 at 2-5 (awarding $100,000 in emotional distress damages to a nurse suing her employer for unfairly disciplining her for another nurse's error).

CommonSpirit further estimates that Ms. Mykland's attorney's fees could be in the tens of thousands of dollars. Dkt. # 17 ¶¶ 28-34. It cites the work that Ms. Mykland's counsel has performed to date, such as filing a 22-page complaint, serving written discovery, and moving to remand. *Id.* ¶ 29. It further reasons that there is much more work ahead, such as the taking of depositions and responding to CommonSpirit's anticipated summary judgment motion. *Id.* ¶¶ 30-33. The Court finds CommonSpirit's representations and reasoning persuasive. The Court need not calculate Ms. Mykland's attorney bill with exactitude for it to conclude, given a reasonable rate of $250 hour, that fees could amount to tens of thousands of dollars throughout this litigation.

Taking emotional distress damages and attorney's fees together, the Court is satisfied with CommonSpirit's evidence and concludes that it has carried its burden to show the amount in controversy here exceeds $75,000. Thus, CommonSpirit has properly remanded this action to this Court, and Ms. Mykland's motion to remand is **DENIED**.

### B.   Motion to Dismiss (Dkt. # 7)

CommonSpirit's motion to dismiss has three parts. First, it asks the Court to strike the complaint entirely for failing to comply with Rule 8 of the Federal Rules of Civil Procedure. Dkt. # 7 at 15-18. Next, it asks the Court to dismiss Ms. Mykland's WLAD claims to the extent they are based on sex discrimination. *Id.* at 18-21. Finally, it asks the Court to dismiss Ms. Mykland's common law claims for wrongful termination and NIED under Rule 12(b)(6). *Id.* at 21-23. The Court addresses each argument in turn.

#### i.   Motion to Strike (Dkt. # 19)

As a preliminary matter, Ms. Mykland moves to strike CommonSpirit's motion to dismiss for failing to comply with this Court's standing order. Dkt. # 19 at 1-2. The order contains a strict meet and confer requirement, requiring the parties to contact

ORDER – 6

opposing counsel before filing any motion, except motions for temporary restraining orders. Dkt. # 9 ¶ 6. The order clearly states, however, that the requirement "does not apply to any motions filed prior to reassignment of the case to this Court." *Id.* Ms. Mykland seeks to strike the instant motion because CommonSpirit did not meet and confer before filing it. Dkt. # 19 at 1-2.

CommonSpirit filed its motion to dismiss the morning of January 27, 2021. Dkt. # 7. Later that day, this Court entered its standing order, which contains its meet and confer requirement. Dkt. # 9. Put simply, CommonSpirit filed its motion before the Court entered its standing order, so the meet and confer requirement did not apply at the time, and the Court will not strike the motion to dismiss. Ms. Mykland's motion to strike is **DENIED**. Dkt. # 19.

### ii. FRCP 8

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Rule 8 sets forth a "liberal notice pleading standard," requiring a complaint to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Pac. Coast Fed'n of Fishermen's Associations v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006)).

In general, "verbosity or length is not by itself a basis for dismissing a complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008)). And the proper length of a pleading "cannot be defined with any great precision." *Id.* at 1059 (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010)). But a plaintiff may violate Rule 8(a) when her pleading is "needlessly long" or "highly repetitious, or confused, or consist[ing] of incomprehensible rambling." *Id.* at 1058-59 (collecting cases).

ORDER – 7

1    For example, in *McHenry v. Renne*, 84 F.3d 1172, 1176-80 (9th Cir. 1996), the Ninth Circuit upheld the dismissal of a complaint that failed to comply with Rule 8 because the 53-page complaint was "argumentative, prolix, replete with redundancy" and "consist[ed] largely of immaterial background information." Such complaints, the court reasoned, "impose unfair burdens on litigants and judges." *Id.* at 1179. Contrast the 68-page complaint in *Hearns v. San Bernardino*. 530 F.3d at 1129-33. There, the Ninth Circuit held that the complaint, though it "set out more factual detail than necessary," was not "confusing and conclusory," and instead was "logically organized," chronological, and "intelligible," and "clearly delineate[d] the claims and the [d]efendants against whom the claims are made." *Id.* As a result, the court concluded that defendants would have "no difficulty" in responding to the complaint. *Id.*

CommonSpirit argues that Ms. Mykland's complaint fails under Rule 8. Dkt. # 7 at 15-18. The complaint, it says, records "in myopic detail" "virtually every one of the frequent disputed day-to-day interactions" that Ms. Mykland had with coworkers, yet the complaint does not explain which actions were discriminatory and why. *Id.* CommonSpirit further argues that the complaint names "at least 23 different co-workers," many of whom were involved in disputes unrelated to Ms. Mykland's claims. *Id.* at 28. In response, Ms. Mykland argues that the complaint is "not redundant nor is it filled with irrelevant information." Dkt. # 19 at 3. Instead, she says, it "chronicles in great detail the erosion of [her] work environment" and provides ample factual support for her discrimination and common law claims. *Id.* at 3-4.

Before the Court is certainly no model complaint. Dkt. # 17-2 at 6-27. It is a 22-page long account of Ms. Mykland's employment at St. Clare Hospital. Across those pages and paragraphs, Ms. Mykland chronicles several interpersonal disputes that she had with coworkers and supervisors. *Id.* ¶¶ 5.3-5.36. Apart from chronology, what connects one work dispute to the next is not immediately apparent. *Id.* The complaint concludes with five claims—three under the WLAD for hostile work environment, disparate

ORDER – 8

treatment, and unlawful retaliation, and two common law claims for wrongful termination and NIED. *Id.* ¶¶ 6.1-6.5. For each claim, Ms. Mykland pleads the same thing: "Plaintiff incorporates all preceding paragraphs as though fully set forth herein as a proximate cause of Plaintiff's injuries." *Id.*

Broadly, the Court agrees with CommonSpirit's characterization: the complaint does not "provide an overarching narrative or connection tying [the events alleged therein] to [Ms. Mykland's] legal causes of action." Dkt. # 7 at 7. It is largely a "series of barely (if that) connected interpersonal conflicts and disputes" between Ms. Mykland and her coworkers and supervisors. *Id.* at 8.

Still, however, the Court cannot conclude that the complaint fails Rule 8's liberal pleading standard. The complaint's length and verbosity alone are not sufficient to show a Rule 8 violation. Despite its length and excessive detail, the complaint here is intelligible and organized. It is not an improper 733-page "tome approaching the magnitude of *War and Peace*." *Cafasso*, 637 F.3d at 1059. Nor is it a 53-page-long confusing "mix[ture of] allegations of relevant facts, irrelevant facts, political argument, and legal argument," nearing a "magazine story" or "press release." *McHenry*, 84 F.3d at 1174, 1176, 1180.

Rather, Ms. Mykland's complaint is like the one in *Hearns*, excessive in detail but still "logically organized," "chronological," and "intelligible." 530 F.3d at 1132. The complaint proceeds chronologically, beginning with Ms. Mykland's hiring in March 2018 and ending with her firing in December 2019. Dkt. # 17-2 ¶¶ 5.3-5.36. Her allegations describe the interpersonal conflicts that Ms. Mykland experienced while working for CommonSpirit, conflicts that presumably undergird her claims for discrimination, wrongful termination, and negligence. Further, although the complaint "names at least 23 different-coworkers," Dkt. # 7 at 18, Ms. Mykland is suing a single defendant. Her allegations may well be overinclusive, and they may well be insufficient to state a claim. But they are logically organized by chronology, and they set forth specific factual

ORDER – 9

allegations.

To be sure, the complaint "provides no indication of which of these many [interpersonal conflicts] is discriminatory or retaliatory, and on what basis," as CommonSpirit suggests. Dkt. # 7 at 16. But to comply with Rule 8, Ms. Mykland "need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Pac. Coast*, 945 F.3d at 1086. Ms. Mykland's complaint does, in fact, provide the notice that CommonSpirit needs to mount a defense.

In sum, the complaint, though excessive in detail and irrelevant in places, complies with Rule 8's liberal pleading standard.

### iii.   FRCP 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for failure to state a claim. The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, a court typically considers only the contents of the complaint. However, a court is permitted to take judicial notice of facts that are incorporated by reference in the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials documents attached to the complaint, documents incorporated by reference in the complaint."); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ("[I]t is proper for the district court to

ORDER – 10

'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss.") (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

### iv. Sex Discrimination

Ms. Mykland is suing CommonSpirit for three types of discrimination, sexual orientation, gender, and "reporting" discrimination. Dkt. # 17-2 ¶¶ 6.1-6.3. To that end, she asserts three WLAD claims. *Id.* CommonSpirit moves to dismiss her claims to the extent they are based on sex discrimination. Dkt. # 7 at 18-21. The complaint, it says, "contains the contours of a claim that [Ms. Mykland] was discriminated against due to her homosexual relationship with another nurse," yet the complaint does not allege that "anyone had animus against her due to her female gender, or that any male employee was treated more favorably than her." *Id.* at 19. In response, Ms. Mykland argues that sex discrimination and sexual orientation discrimination are one in the same: "[a] person's gender and their sexual orientation go hand in hand." Dkt. # 19 at 5. That much is true, she argues, given the United State Supreme Court's decision in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1737 (U.S. 2020).

To start, the Court agrees that the complaint lacks factual allegations about sex discrimination apart from sexual orientation discrimination. CommonSpirit concedes that the complaint contains specific factual allegations that Ms. Mykland was discriminated against because of her sexual orientation. Dkt. # 7 at 20; *see also* Dkt. # 17-2 ¶¶ 5.32-5.33. But it argues that the complaint lacks any corresponding allegation for sex discrimination. Dkt. # 7 at 20. Ms. Mykland does not dispute that. Dkt. # 19 at 4-5. She only argues that sexual orientation discrimination is itself sex discrimination. *Id.*

The Court first addresses Ms. Mykland's *Bostock*-inspired argument that sex discrimination and sexual orientation discrimination are one in the same. This appears to be a matter of first impression. To date, no Washington court has applied *Bostock*'s reasoning to the WLAD.

ORDER – 11

When interpreting a state statute as a matter of first impression, a federal court must "determine what meaning the state's highest court would give to the law." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (quoting *Bass v. Cty. of Butte*, 458 F.3d 978, 981 (9th Cir. 2006)). Thus, the court "must follow the state's rules of statutory interpretation." *Id.*

Under Washington law, rules of statutory interpretation require a court to "first look to the plain meaning of the statute." *Matter of Dependency of E.M.*, 484 P.3d 461, 465 (Wash. 2021) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 43 P.3d 4 (Wash. 2002)). Plain meaning is discerned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Associated Press v. Washington State Legislature*, 454 P.3d 93, 96 (Wash. 2019) (quoting *Campbell*, 43 P.3d at 10). If the plain meaning of a statute is unambiguous, the inquiry ends. *Matter of Dependency of E.M.*, 484 P.3d at 465. "Only when the statute is ambiguous do we resort to the aids of statutory construction and legislative history." *Id.*

Construing an unambiguous statute requires "read[ing] the statute in its entirety." *State v. Keller*, 19 P.3d 1030, 1035 (Wash. 2001). Each provision "must be viewed in relation to the other provisions and harmonized," and "all language is given effect with no portion rendered meaningless or superfluous." *Id.*; *see also Whatcom Cty. v. City of Bellingham*, 909 P.2d 1303, 1308 (Wash. 1996) (collecting cases). Further, "different language [should not] be read to mean the same thing": "When the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings." *Densley v. Dep't of Ret. Sys.*, 173 P.3d 885, 889-90 (Wash. 2007).

Ms. Mykland puts two WLAD sections at issue, RCW 49.60.030 and RCW 49.60.180. Both sections protect against discrimination "because of" "sex" and "sexual orientation."

RCW 49.60.030 provides:

ORDER – 12

> (1) The right to be free from discrimination *because of* race, creed, color, national origin, citizenship or immigration status, *sex*, honorably discharged veteran or military status, *sexual orientation*, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability is recognized as and declared to be a civil right. This right shall include, but not be limited to:
>
> (a) The right to obtain and hold employment without discrimination . . . .

*Id.* (emphasis added).

Similarly, RCW 49.60.180 prohibits discrimination in the workplace:

> It is an unfair practice for any employer:
>
> . . . .
>
> (2) To discharge or bar any person from employment *because of* age, *sex*, marital status, *sexual orientation*, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability.
>
> (3) To discriminate against any person in compensation or in other terms or conditions of employment *because of* age, *sex*, marital status, *sexual orientation*, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability: PROVIDED, That it shall not be an unfair practice for an employer to segregate washrooms or locker facilities on the basis of sex, or to base other terms and conditions of employment on the sex of employees where the commission by regulation or ruling in a particular instance has found the employment practice to be appropriate for the practical realization of equality of opportunity between the sexes.

*Id.* (emphasis added).

The WLAD defines both "sex" and "sexual orientation" and gives each its own definition. RCW 49.60.040. "Sex" means "gender." RCW 49.60.040(26). "Sexual orientation," on the other hand, means "heterosexuality, homosexuality, bisexuality, and gender expression or identity." RCW 49.60.040(27). "Gender expression or identity" is further defined as "having or being perceived as having a gender identity, self-image,

ORDER – 13

1  appearance, behavior, or expression, whether or not that gender identity, self-image,
2  appearance, behavior, or expression is different from that traditionally associated with the
3  sex assigned to that person at birth." *Id.*

4        The plain meaning of these sections is unambiguous. Under the WLAD, "sex"
5  means one thing; "sexual orientation" means another. The WLAD itself defines the two
6  terms separately. If that were not enough, the two sections in question, RCW 49.60.030
7  and RCW 49.60.180, list both characteristics separately. Under Washington's principles
8  of statutory interpretation, the Court must harmonize the language in each section. The
9  Court must give all language effect, must not render portions meaningless or superfluous,
10 and must presume that different terms mean different things. Here, should the Court
11 adopt Ms. Mykland's interpretation and presume that "sexual orientation" discrimination
12 is automatically "sex" discrimination, then one of the two terms becomes superfluous.
13 The Court cannot countenance that reading. Thus, the Court rejects Ms. Mykland's
14 argument that—for purposes of the WLAD—"[a] person's gender and their sexual
15 orientation go hand in hand." Dkt. # 19 at 5.

16       The United States Supreme Court's decision in *Bostock* is not controlling. There,
17 the Supreme Court decided whether Title VII of the Civil Rights Act of 1964—which
18 outlaws discrimination in the workplace on the basis of race, color, religion, national
19 origin, and "sex"—prevents an employer from terminating its employee because the
20 employee was homosexual or transgender. 140 S. Ct. at 1737. The Court held that it
21 does. *Id.* at 1754. In reaching that conclusion, the Supreme Court reasoned:
22 "[H]omosexuality and transgender status are distinct concepts from sex. But, as we've
23 seen, discrimination based on homosexuality or transgender status necessarily entails
24 discrimination based on sex; the first cannot happen without the second." *Id.* at 1746-47.
25       Ms. Mykland requests this Court to take that interpretation of Title VII and apply
26 it to the WLAD. The Court will not do so for two reasons. First, the *Bostock* court
27 expressly stated that its holding was limited to the law before it, Title VII. 140 S. Ct. at
28 ORDER – 14

1753 ("The employers worry that our decision will sweep beyond Title VII to other federal or state laws that prohibit sex discrimination. . . . But none of these other laws are before us; we have not had the benefit of adversarial testing about the meaning of their terms, and we do not prejudge any such question today."). Second, Title VII and the WLAD differ in one key respect—the former does not explicitly include "sexual orientation" discrimination; the latter does. The issue in *Bostock* then—whether an explicit term, "sex," implicitly includes other types of discrimination, "sexual orientation"—is not an issue here. Unlike Title VII, the WLAD already explicitly forbids sexual orientation discrimination.

Surely, *Bostock* might affect the interpretation of some state antidiscrimination laws. The opinion itself contemplates that possibility. For example, as they interpret their own state's antidiscrimination laws, state courts may find the Supreme Court's interpretation of Title VII compelling. Washington courts, for example, may agree that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex" and may interpret the WLAD accordingly. *Bostock*, 140 S. Ct. at 1741; *see also Antonius v. King Cty.*, 103 P.3d 729, 735 (Wash. 2004) ("We have frequently recognized that while federal discrimination cases are not binding, they may be persuasive and their analyses adopted where they further the purposes and mandates of state law. . . . Conversely, where Title VII and the state discrimination statutes are different and following federal cases would not further the purposes of state law, the court has declined to find federal authority persuasive." (citations omitted) (collecting cases)).

But, absent further guidance from state courts, this Court determines, as it must, what meaning the Washington Supreme Court would give to the WLAD. Applying Washington statutory interpretation principles, the Court concludes that the state's highest court would determine that "sex" and "sexual orientation" discrimination are distinct under the WLAD.

ORDER – 15

1    CommonSpirit argues that the complaint here lacks factual allegations about sex
2    discrimination, separate from sexual orientation discrimination. Dkt. # 7 at 19. Ms.
3    Mykland does not dispute that. Dkt. # 19 at 4-5. The Court treats her silence as a
4    concession. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal.
5    2013) (collecting cases). Given that the complaint fundamentally lacks any allegations
6    about sex discrimination, the Court need not address Ms. Mykland's WLAD claims of
7    hostile work environment, disparate treatment, and retaliation individually. To the extent
8    these claims rely on sex discrimination, Ms. Mykland has failed to offer specific factual
9    allegations to state a plausible claim for relief, and her WLAD claims are **DISMISSED**.
10   Dkt. # 17-2 ¶¶ 6.1-6.3. The Court does not dismiss her WLAD claims to the extent they
11   are asserting sexual orientation discrimination.

          **v.**      **Wrongful Termination**

13   "The tort for wrongful discharge in violation of public policy is a narrow
14   exception to the at-will doctrine." *Becker v. Cmty. Health Sys., Inc.*, 359 P.3d 746, 749
15   (Wash. 2015). To state a claim, a plaintiff must plead that her termination "was
16   motivated by reasons that contravene an important mandate of public policy." *Id.* The
17   "public policy" on which the claim rests must be an "authoritative public declaration of
18   the nature of the wrong." *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 257
19   P.3d 586, 596 (Wash. 2011) (quoting *Roberts v. Dudley*, 993 P.2d 901, 904 (Wash.
20   2000)). What constitutes a "clear mandate of public policy" is a matter of law and can be
21   established by "judicial decisions or constitutional, statutory, or regulatory provisions or
22   schemes." *Martin v. Gonzaga Univ.*, 425 P.3d 837, 844 (Wash. 2018).

23   Ms. Mykland's wrongful termination claim fails because she does not identify the
24   public policy on which her claim rests. *See* Dkt. # 17-2 ¶ 6.4. Her complaint identifies
25   no judicial decision, constitutional provision, statute, regulation, or other authoritative
26   public declaration. *Id.* In her response to the motion to dismiss, she represents that the
27   WLAD may itself serve as a public policy for her wrongful termination claim. Dkt. # 19

ORDER – 16

at 6 (citing *Roberts*, 993 P.2d at 906). That may be true, but that representation, found in her response brief, is not an allegation in her complaint. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (alteration omitted). Based on the allegations in Ms. Mykland's complaint, the Court concludes that she has failed to state a claim because she has not identified a public policy. Her wrongful termination claim is **DISMISSED**. Dkt. # 17-2 ¶ 6.4.

### vi.   Negligent Infliction of Emotional Distress

"There is no duty for an employer to provide employees with a stress free workplace." *Snyder v. Med. Serv. Corp. of E. Washington*, 35 P.3d 1158, 1164 (Wash. 2001). "[E]mployers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes." *Id.* (quoting *Bishop v. State*, 889 P.2d 959, 963 (Wash. Ct. App. 1995)).

In Washington, to plead a negligent infliction of emotional distress claim, a plaintiff must show "(1) that her employer's negligent acts injured her, (2) the acts were not a workplace dispute or employee discipline, (3) the injury is not covered by the Industrial Insurance Act, and (4) the dominant feature of the negligence claim was the emotional injury." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 972 (9th Cir. 2002) (quoting *Snyder v. Med. Serv. Corp. of E. Wash.*, 988 P.2d 1023, 1028 (Wash. Ct. App. 1999)). What is more, a plaintiff must allege "objective symptomology"—that her emotional distress is "susceptible to medical diagnosis and prov[able] through medical evidence." *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 205 (Wash. 2014) (quoting *Hegel v. McMahon*, 960 P.2d 424 (Wash. 1998)).

Ms. Mykland's NIED claim fails for two reasons. First, she does not allege that her distress was caused by acts independent from her workplace disputes or employee discipline. To be sure, it is not clear what facts Ms. Mykland's NIED claim relies on. Dkt. # 17-2 ¶ 6.5. Presumably, it is her termination from CommonSpirit. Dkt. # 17-2

ORDER – 17

¶¶ 5.33-5.36.  If so, her claim fails because her termination would be considered workplace discipline, upon which no duty can be found.  And if her claim is based on the several interpersonal disputes that she had throughout her employment, then her claim also fails because those disputes would be considered workplace disputes, again upon which no duty can attach.  Though Ms. Mykland argues that it is possible to assert an NIED claim in the employment context, so long as an "independent factual basis beyond [her] discrimination claim" exists, she has not identified any such independent basis.  *See* Dkt. # 19 at 6-7.  Second, Ms. Mykland simply fails to allege that her distress is susceptible to medical diagnosis and has thus failed to plead objective symptomology.

In sum, Ms. Mykland's NIED claim is **DISMISSED**.

### IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion to Strike (Dkt. # 19) and Motion to Remand (Dkt. # 23) and **GRANTS in part** Defendant's Motion to Dismiss and for a More Definite Statement or to Strike Complaint (Dkt. # 7).  The Court grants Ms. Mykland leave to file an amended complaint **within thirty days** of the entry of this Order.

DATED this 16th day of September, 2021.

*(signature)*

The Honorable Richard A. Jones
United States District Judge

ORDER – 18